**Joseph A. CERBONE, Appellant,**

v.

**Carolyn FARB, Appellee.**

No. 14–06–00666–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 8, 2007.

Ann Ryan Robertson, Charles Aldine Hammaker III, Jack D. Ballard, Martha F. McDugald, Houston, for appellant.

J. Christopher Reynolds, Laura Jann Kissel, Houston, for appellee.

Panel consists of Justices YATES, SEYMORE, and GUZMAN.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, Joseph Cerbone, brings this interlocutory appeal from an order denying his special appearance. In two issues, appellant argues (1) he is not subject to the jurisdiction of Texas courts and (2) the exercise of jurisdiction over appellant would offend due process. We reverse

and render judgment dismissing the cause of action.

## I. BACKGROUND

This suit followed execution of a settlement agreement and promissory note in connection with prior litigation. The prior suit arose out of an investor/broker relationship between Carolyn Farb, appellee, and American Investment Services, Inc. ("AIS"). Sometime before the year 2000, Farb opened a brokerage account at AIS with Jorge Villalba serving as her stockbroker. After sustaining losses, she filed the first suit against AIS and Villalba and alleged violations of the Texas Deceptive Trade Practices Act, Texas securities laws, common law fraud, breach of fiduciary duty, negligence, and gross negligence. On January 25, 2002, the first suit was settled at a mediation in Texas. Farb signed a "Confidential Release and Settlement Agreement." Appellant did not attend the mediation in Texas. However, two days before the mediation, he signed the settlement agreement in Illinois. It is undisputed that he signed the mediation agreement in his representative capacity as president and chief executive officer of AISCO Holdings, Inc. ("AISCO"). Under the agreement, AISCO agreed to pay Farb, the sum of $82,500.00 "in accordance with the form of promissory note ... attached ... and incorporated by reference." Farb agreed to release, acquit, and discharge AIS and AISCO and each of their respective employees "from any and all claims, demands, liabilities, or causes of action" relating to the allegations in the prior suit. On January 25, 2002, appellant signed the promissory note which included terms requiring twenty-seven monthly payments of $3,000 each, with the first payment due on February 5, 2002.

Farb received the first payment on February 4, 2002, and filed a nonsuit dismissing her claims against the parties on February 27, 2002. When Farb did not receive the second payment on March 5, 2002, she sent a letter to appellant as the chief executive officer of AISCO on March 18, 2002. The payment was received seventeen days late on March 22, 2002. Farb sent a second letter on March 26, 2002, regarding the March 18, 2002 notice. Farb did not receive any more payments.

During May 2002, appellant's association with AIS and AISCO ended. Farb sent AISCO a letter on November 25, 2002, demanding payment of $24,000 by December 10, 2002. AIS and AISCO did not remit. Consequently, Farb sent a letter on December 11, 2002, demanding the unpaid principal and interest on the note in the amount of $76,500. Farb resent the November 25th and December 10th letters on December 20, 2002. Farb filed this suit on July 9, 2005, against AIS, AISCO, and appellant alleging common law fraud, breach of contract, suit on an open account or to enforce note payable, and conspiracy. She also sought declaratory relief and damages. In her petition, Farb asserted that appellant is liable in his individual capacity on the promissory note. Specifically, Farb asserted appellant is personally liable on the note because he did not sign the note in his representative capacity. The only word below the signature line is "Maker." However, we note that "AISCO Holdings, Inc." is denominated as "Maker" at the top of the note.

In response to Farb's suit, appellant filed a special appearance asserting that the district court does not have specific or general jurisdiction. The trial court denied appellant's special appearance on July 11, 2006.

## II. STANDARD OF REVIEW

The plaintiff bears the initial burden of pleading sufficient allegations to

bring a non-resident defendant within the personal jurisdiction of a Texas court. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002); *McKanna v. Edgar,* 388 S.W.2d 927, 930 (Tex.1965). A defendant who challenges the trial court's exercise of personal jurisdiction through a special appearance bears the burden of negating all bases of personal jurisdiction. *Marchand,* 83 S.W.3d at 793; *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985).

■ Whether a trial court has personal jurisdiction over a defendant is a question of law, which we review *de novo. Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 805–06 (Tex.2002); *Marchand,* 83 S.W.3d at 794. However, the trial court frequently must resolve questions of fact before deciding the question of jurisdiction. *Marchand,* 83 S.W.3d at 794. When, as here, the trial court does not issue findings of facts and conclusions of law with its special appearance ruling, all fact findings necessary to support the judgment and supported by the evidence are implied. *Id.* at 795; *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). However, these implied findings are not conclusive and may be challenged for legal and factual sufficiency when this court has a complete record on appeal. *Marchand,* 83 S.W.3d at 795.

### III. THE LAW OF PERSONAL JURISDICTION

■ A Texas court may exercise personal jurisdiction over a non-resident defendant only if (1) the Texas long-arm statute authorizes the exercise of personal jurisdiction, and (2) the exercise of personal jurisdiction comports with the state and federal constitutional guarantees of due process. *See id.* The Texas long-arm statute permits Texas courts to exercise jurisdiction over a non-resident that "does business" in Texas. TEX. CIV. PRAC. & REM.

CODE ANN. § 17.042 (Vernon 1997). The broad language of the "does business" requirement in section 17.042 permits the statute to reach "as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). Thus, the requirements of the long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process requirements. *See id.*

■ The due process clause of the federal constitution permits a court to exercise jurisdiction over a nonresident defendant if (1) the defendant has purposely established "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Coleman,* 83 S.W.3d at 806; *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ The requisite extent of the minimum contacts varies depending upon whether the litigants assert specific or general jurisdiction. *Guardian Royal,* 815 S.W.2d at 227; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The parties acknowledge that this appeal turns on whether the trial court has specific jurisdiction. Therefore, we limit our analysis to determining whether appellant's contacts with Texas give rise to specific jurisdiction. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the defendant, the forum, and the

litigation. *Guardian Royal*, 815 S.W.2d at 228. The cause of action must arise out of or relate to the nonresident defendant's contact with the forum state. *Id.* at 227. Specific jurisdiction is established when (1) a defendant's contacts with the forum are purposeful and not based on the unilateral activity of the plaintiff or others, and (2) the cause of action arises from or relates to a defendant's "purposefully directed" activities to the forum. *Id.* at 227–28.

"Purposeful availment" is the touchstone of jurisdictional due process. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex.2005). In *Michiana*, the Texas Supreme Court articulated three important aspects of the purposeful availment inquiry. *Id.* at 785. First, only the defendant's contacts with the forum count. *Id.* This ensures that a defendant will not be haled into a jurisdiction solely as a result of "unilateral activity of another party or a third party." *Id.* (quoting *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174); *Guardian Royal*, 815 S.W.2d at 226. Second, the acts relied upon must be purposeful. *Id.* A defendant will not be haled into a jurisdiction solely based on contacts that are "random, isolated, or fortuitous." *Michiana*, 168 S.W.3d at 784 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Third, a defendant "must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction" because "[j]urisdiction is premised on notions of implied consent—that by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there." *Id.* (citing *World–Wide Volkswagen Corp.*

v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

## IV. ANALYSIS

■■■ In his first issue, appellant contends the trial court erred by denying his special appearance because (1) appellant's contact with Texas does not satisfy the purposeful availment requirement of the minimum contacts test and (2) Farb's claims of fraud provide no basis for assertion of specific jurisdiction.

### A. Minimum Contacts

A specific jurisdiction minimum-contacts analysis must focus on appellant, the state of Texas, and the litigation. *Guardian Royal*, 815 S.W.2d at 228. In this case, the litigation arises out of, and relates to, a promissory note signed by appellant as part of an agreement to settle prior litigation between Farb, AIS, AISCO, and Villalba. This is the single contact for our consideration.[1] To exercise specific jurisdiction over appellant individually, there must be some act in regard to the signing of the promissory note or by which appellant purposefully availed himself of the benefits and protections of the laws of Texas. *See Burger King*, 471 U.S. at 475, 105 S.Ct. 2174.

Appellant contends his contact with Texas does not satisfy "purposeful availment" standards as discussed by the Texas Supreme Court in *Michiana*. *See* 168 S.W.3d at 785. Specifically, appellant contends (1) third-party contacts are not relevant, (2) his only contact is fortuitous and not purposeful, and (3) he did not benefit from his execution of the promissory note.

---

1. The parties dispute the capacity in which appellant signed the note. Appellant contends he signed the note in his representative capacity because the top of the note provides "Maker: AISCO Holdings, Inc.," and he signed above a signature line labeled, "Mak- er." Farb contends appellant is personally liable on the note because he signed as "Maker" without an indication directly below the signature line that he was signing in a representative capacity.

### 1. Third party contacts

■ First, under *Michiana*, only the defendant's contacts with the forum are considered in the analysis. *Id.* A defendant will not be haled into a jurisdiction solely as a result of the "unilateral activity of another person or a third person." *Id.* Appellant contends Farb blurs the distinction between his acts and acts of the companies he represented. Appellant points out it is undisputed that he signed the settlement agreement while in Illinois and only in his representative capacity. He further notes that the prior litigation and the settlement agreement are contacts involving third parties—AISCO and AIS—and not appellant and therefore should not be considered in our minimum contacts analysis.

### 2. Contact is fortuitous and not purposeful

*Representative Capacity*

■ Second, under *Michiana*, the acts relied upon must be "purposeful" rather than fortuitous. *Id.* Appellant contends his contact was "merely a fortuitous mistake" and not a sufficient contact to justify exercise of jurisdiction because appellant intended to execute the promissory note only as a representative of AISCO. First, appellant argues he was acting in his representative capacity because the record reflects he: (1) was not a party to the prior litigation, (2) did not participate either in person or by phone in the mediation of the prior litigation, (3) is not mentioned as a party in the settlement agreement, (4) the settlement agreement states "AISCO Holdings, Inc. agrees to pay Farb the total sum of $82,5000.00," (5) he signed the settlement agreement as the President of AISCO and as the CEO of AIS, (6) none of the demand letters indicated appellant was individually liable on the note, (7) the top of the note provided "Maker: AISCO Holdings, Inc.," and (8) none of the payments made under the promissory note were made by appellant individually.

■ In addition, appellant argues he is protected by the fiduciary shield doctrine because he signed the note in a corporate capacity. The fiduciary shield doctrine protects a corporate officer or employee from the exercise of general personal jurisdiction when all of the contacts with Texas were on behalf of his employer. *Wright v. Sage Eng'g,* 137 S.W.3d 238, 250 (Tex.App.-Houston [1st Dist.] 2004, pet. denied). Texas courts applying the fiduciary shield doctrine have limited its application to attempts to exercise general jurisdiction over a nonresident defendant. *Id.* However, it does not protect a corporate officer from specific personal jurisdiction as to intentional torts or fraudulent acts for which he may be held individually liable. *Id.* Appellant concedes the fiduciary shield doctrine does not protect a corporate officer from specific jurisdiction as to intentional torts or fraudulent acts for which he may be liable; however, he argues that breach of contract is not a tort and, therefore, the fiduciary shield doctrine is not applicable. *See id.*

In response, Farb argues appellant did not prove he signed the promissory note in a representative capacity and appellant's subjective intent is not relevant to the analysis. Farb refers to case law and statutes pertaining to determination of an individual's liability who purportedly signs a promissory note in a representative capacity. *See* Tex. Bus. & Com.Code Ann. § 3.402(b)(2) (Vernon 2002) (determining liability of negotiable instruments purportedly signed in a representative capacity); *Suttles v. Thomas Bearden Co.,* 152 S.W.3d 607, 612–13 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (explaining how to determine liability of promissory note based on form of signature block under

section 3.402(b)(1) of the Texas Business and Commerce Code); *Caraway v. Land Design Studio,* 47 S.W.3d 696, 700 (Tex. App.-Austin 2001, no pet.) (explaining how to determine liability of promissory note based on language of instrument and section 3.402 of the Texas Business and Commerce Code); *A. Duda & Sons v. Madera,* 687 S.W.2d 83, 85 (Tex.App.-Houston [1st Dist.] 1985, no writ) (explaining signer is liable on a note where the instrument does not show on its face that he signed in a representative capacity). However, none of these cases involve disputes regarding exercise of personal jurisdiction. Here, the issue before us is not a determination of appellant's liability under the promissory note, but whether his signature on the note is a sufficiently purposeful contact to justify the exercise of jurisdiction. *See Glattly v. CMS Viron Corp.,* 177 S.W.3d 438, 449 (Tex.App.-Houston [1st Dist.] 2005, no pet.) ("merits of claims are not at issue during a special appearance"); *Wright,* 137 S.W.3d at 251 n. 10.

*Single, contractual contact*

Appellant further contends his single contact—execution of the promissory note outside of Texas—does not meet the purposeful availment standard notwithstanding the question of representative capacity. Appellant refers us to the Texas Supreme Court's *Michiana* decision and the United States Supreme Court's *Burger King* decision. The *Burger King* court explained that the fact a nonresident enters into a contract with a resident of the forum does not automatically establish sufficient minimum contacts with that forum. 471 U.S. at 478, 105 S.Ct. 2174. The *Michiana* court explained, "the United States Supreme Court has emphatically answered the question whether a single contract with a Texas resident can automatically establish jurisdiction—'the answer clearly is that it cannot.'" 169 S.W.3d at 786 (citing *Burger King,* 471 U.S. at 478, 105

S.Ct. 2174). Moreover, "[i]t is true that in some circumstances a single *contract* may meet the purposeful availment standard, but not when it involves a single *contact* taking place outside the forum state." *Id.* at 787 (emphasis in original) (citing a long-term franchise agreement and a life-insurance policy as examples of a single contract involving a series of contacts).

In response, Farb argues *Burger King* and *Michiana* do not apply to this case because those cases concern contracts for a good or service and do not involve the execution of a contract. Farb further contends the act of signing the promissory note in this case was purposeful because appellant "personally executed a promissory note in favor of a Texas resident to settle litigation pending in a Texas state court." To support her argument that appellant's signing of the note was purposeful because it settled pending litigation in Texas, appellant cites *Diversified Resources Corp. v. Geodynamics Oil and Gas Incorp.,* 558 S.W.2d 97 (Tex.App.-Corpus Christi 1977, writ ref'd n.r.e.). In *Diversified Resources,* the defendant, a Nevada resident, entered into an agreement and signed a promissory note to settle litigation filed by the Texas plaintiff in the Southern District of Texas, Corpus Christi Division. *Id.* The note was executed in favor of the Texas plaintiff and provided that the payments be made in Texas. *Id.* When the defendant did not make the payments as promised, the Texas plaintiff brought suit in a Texas court. *Id.* at 98. The Corpus Christi Court of Appeals explained, "there were contacts by the defendant in Texas other than making of payments; to-wit, the settling of aforesaid lawsuit between the parties here and the making of an agreement to implement the settlement." *Id.* at 99. The court held that executing the note was sufficient to warrant exercise of specific jurisdiction

over the defendant because it "not only purposefully conducted business in the State of Texas but it also contracted to perform its obligations within the State of Texas, thus invoking the benefits and protections of this State's law." *Id.*

Here, however, there is an important factual distinction between this case and *Diversified Resources.* In this case, the prior law suit was between Farb, AIS, AISCO, and Villalba. Appellant asserts that unlike the defendant in *Diversified Resources,* appellant was not a defendant in the underlying case that was settled by an agreement and a promissory note. Furthermore, unlike *Diversified Resources,* in this case it is clear that appellant is not a party to the settlement agreement in his individual capacity. Appellant never personally made a payment in settlement of the suit, and settlement of the prior lawsuit did not provide any personal benefit to appellant.

Farb also cites this court's decision in *Turner v. Turner* where we applied *Diversified Resources.* No. 14–98–00510–CV, 1999 WL 33659 (Tex.App.-Houston [14th Dist.] Jan. 25, 1999, no pet.) (not designated for publication). The appellant in *Turner,* Mary Turner, a non-resident, voluntarily intervened in an action in Texas seeking the appointment of a guardian for John Turner and filed by Bryon Turner. *Id.* at *1. Mary and Bryon entered into an agreed judgment for Mary to perform certain duties imposed on her by a revokable trust. *Id.* It also provided the court had personal jurisdiction over the parties. *Id.* After John's death, Bryon filed a petition to enforce the trust and remove Mary as trustee. *Id.* In finding the trial court had personal jurisdiction over Mary, this court explained that Mary, as intervenor in the guardianship suit, inserted herself into the proceeding and availed herself of the Texas judicial system thereby conferring spe-

cific jurisdiction on the trial court. *Id.* at *7. However, appellant argues and we agree, *Turner* is distinguishable. In this case, appellant never availed himself of the Texas judicial system. He also did not insert himself in the prior suit nor enter into an agreed judgement.

### 3. No personal benefit derived from his execution of the promissory note

Third, a defendant must seek some benefit, advantage, or profit by "availing himself of the jurisdiction." *Michiana,* 168 S.W.3d at 785. Appellant contends he did not personally benefit from execution of the promissory note. Specifically, appellant contends he received no benefit because he was not a party to the prior litigation or the settlement agreement and intended to sign the promissory note only as the representative of AISCO, "Maker" of the note. Therefore, any alleged benefit from the settlement agreement and the promissory note inured only to the prior litigants, not appellant individually.

Accordingly, we agree with appellant, that he did not purposefully avail himself of Texas jurisdiction under the *Michiana* guidelines. Appellant's signature on the promissory note, his sole "contact" with Texas, does not satisfy the "purposeful availment" requirement. Even if he signed in his individual capacity, his individual involvement would have begun at the time the promissory note was executed because all other documents executed previously clearly indicated that he signed in a representative capacity. This one contact is not sufficient to fulfill the purposeful availment requirement.

### B. Tort Allegations

Alternatively, Farb contends appellant fraudulently induced her to settle the prior litigation and his alleged misrepresentations constitute "additional purposeful contact with Texas and further justify the

court's assertion of specific jurisdiction." Specifically, Farb contends appellant's signature on the promissory note and the arrival of the February payment fraudulently induced her to settle the prior litigation. However, in *Michiana*, the Texas Supreme Court expressly rejected personal jurisdiction based solely on the effects or consequences of an alleged tort committed in another forum that had repercussions in Texas. *See* 168 S.W.3d at 790–92. Instead of considering whether a tort was directed to Texas, the Texas Supreme Court explained that courts should limit their jurisdictional evaluations to the actual business contacts rather than on what the parties thought, said, or intended. *Michiana*, 168 S.W.3d at 791. A minimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant. *Id.* at 790. The court further explained that if directing a tort at Texas was enough for minimum contacts, then personal jurisdiction would arise when the plaintiffs allege a tort, but not when they allege breach of contract. *Id.* at 791. Thus, the defendant's purposeful availment would depend on the form of claim selected by the plaintiff. *Id.* Appellant refers us to the recent Austin Court of Appeals case *Niehaus v. Cedar Bridge,* in which the plaintiff alleged corporate officers were individually liable for payments under a lease even though they were not parties to the lease in their individual capacity based on the theory that bonuses paid to the individuals were fraudulent transfers in detriment to the plaintiff's rights as a creditor under the lease. 208 S.W.3d 575, 577–79 (Tex.App.-Austin, no pet.). Relying on *Michiana* and the fact that the allegedly fraudulent activity occurred in California, the court explained, "[a]lthough the injury felt in Texas may constitute a contact with the forum, it does not, on its own, constitute sufficient minimum contacts with the forum for jurisdic-

tional purposes." *Id.* at 583. The court concluded the California defendants were not subject to the personal jurisdiction of the Texas court. *Id.* at 584.

Following the court's rationale in *Michiana,* we cannot say that appellant's single contact—the execution of a promissory note—is sufficient to confer jurisdiction on the Texas district court. In sum, for the reasons stated above, we cannot conclude that this one contact constitutes purposeful availment under the minimum-contacts test.

Because we have sustained appellant's first issue, we do not reach appellant's second issue which pertains to due process. Accordingly, we reverse and render judgment dismissing this action for lack of personal jurisdiction.