

**NUMBER 13-12-00347-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

MT. MCKINLEY INSURANCE COMPANY
AND EVEREST REINSURANCE COMPANY,                  Appellants,

**v.**

GRUPO MEXICO, S.A.B. DE C.V.,                               Appellee.

---

**On appeal from the 319th District Court
of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Chief Justice Valdez**

In this appeal, we are asked whether the trial court erred by granting a special appearance filed by appellee Grupo Mexico, S.A.B. de C.V. ("Grupo") in a lawsuit brought by appellants Mt. McKinley Insurance Company ("Mt. McKinley") and Everest Reinsurance Company ("Everest"). By two issues, appellants argue (1) that the trial

court erred by granting the special appearance, and (2) in the alternative, that the trial court erred by denying Mt. McKinley's motion for continuance. We reverse and remand.

## I. BACKGROUND

In 1999, Grupo, an international mining concern based in Mexico City, acquired Asarco, Inc. ("Asarco")[1] in a leveraged buyout. Grupo formed a wholly-owned subsidiary, Americas Mining Corporation ("AMC"), to hold the shares of Asarco. In 2001, Asarco sued Mt. McKinley and other insurers in Nueces County, Texas, seeking payment under an insurance policy for asbestos claims made against Asarco. Grupo was not a party to that litigation. On March 20, 2003, Asarco and Mt. McKinley entered into a "Settlement Agreement, Release and Policy Buy-Back" whereby Mt. McKinley agreed to pay $12 million in exchange for the release of all claims against it and the voiding of the insurance policy. The agreement further provided:

> ASARCO agrees that it shall defend, indemnify, save and hold harmless Mt. McKinley from and against any and all claims, crossclaims, actions or liability of any kind (including, but not limited to, direct action suits, suits for contribution, indemnification or subrogation, claims by other insurers and any claims for coverage by any other insured or alleged insured under the Policies) encompassed by this Agreement and from all costs or expenses, including reasonable attorneys' fees incurred in defending against any such claims, crossclaims, actions or liabilities.

The settlement agreement contained definitions of certain terms, including the following:

> "ASARCO" means ASARCO Incorporated, Lac d'Amiante du Quebec (hereinafter "LAQ") and Capco Pipe Company, Inc. (hereinafter "Capco"), Grupo Mexico S.A. de C.V., Corporation Minera Nor Peru, and any all of their predecessors, any and all of their past, present and future successors, assigns, subsidiaries, divisions, joint ventures, affiliates, holding companies, parent companies, agents, servants, employees, officers, and directors, and any and all other Persons (as herein defined) insured or claiming, or which in the future may claim, any right, title or interest in or under any of the Policies (as herein defined) as named

---

[1] Asarco is an acronym derived from the company's former name, the American Smelting and Refining Company.

2

insureds, additional insureds, additional named insureds or otherwise.

In 2005, Asarco and several of its wholly-owned subsidiaries filed for bankruptcy. Two years later, Asarco initiated adversary proceedings against Mt. McKinley in bankruptcy court, in which it sought to avoid the 2003 release as a constructive fraudulent transfer. *See* FED. R. BANKR. P. 7001–7087 (regarding adversary proceedings). In the adversary proceedings, Asarco contended that it released its right to insurance coverage for less than "reasonably equivalent value" and that it was insolvent at the time or became insolvent as the result of the release. *See* 11 U.S.C. § 548 (stating that the bankruptcy trustee "may avoid any transfer . . . of an interest of the debtor in property . . . if the debtor . . . received less than a reasonably equivalent value in exchange for such transfer . . . and . . . was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer").

Mt. McKinley then asked Grupo to acknowledge its duty, pursuant to the 2003 settlement agreement, to defend and indemnify it for the adversary proceedings in bankruptcy court. Grupo refused to do so. Subsequently, Mt. McKinley filed the underlying suit in Nueces County against Grupo, Asarco, and AMC, seeking a declaratory judgment that the defendants were obliged to defend and indemnify Mt. McKinley under the settlement agreement. McKinley also sought damages for the amount it incurred and will incur in connection with the bankruptcy adversary proceedings.

When Grupo did not answer the lawsuit within the time prescribed by law, Mt. McKinley filed a motion for default judgment. Grupo then filed a special appearance on

February 27, 2009,[2] some fifteen months after suit was initially filed, contending that the trial court lacked personal jurisdiction over it. Mt. McKinley propounded interrogatories and requests for production seeking evidence relevant to the jurisdictional inquiry. In a letter to Mt. McKinley's counsel dated May 13, 2009, Grupo's counsel refused to comply with the discovery requests, claiming that Grupo "is under no obligation to respond until the court considers and rules on" the motion for default judgment and the special appearance. Appellants filed a motion to compel discovery, which the trial court granted by order dated September 30, 2009. However, Grupo objected to each of Mt. McKinley's initial requests for production and produced no discovery related to the jurisdictional issue.[3]

Grupo filed an amended special appearance on March 4, 2010. On November 28, 2011, the trial court heard arguments on the amended special appearance as well as on various motions filed by appellants regarding discovery, including a motion for continuance of the special appearance hearing in light of the fact that Grupo was allegedly refusing to provide discovery related to the jurisdiction issue. The trial court denied the motion for continuance and granted Grupo's special appearance, dismissing Grupo from the case. This appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West Supp. 2011) (stating that a person may appeal from an interlocutory

---

[2] Appellants argue that Mt. McKinley was not served with the special appearance until April of 2009.

[3] Grupo even demurred to appellants' request for an admission that "Grupo is a Mexican Corporation with its principal place of business in Mexico." In its response to the request, Grupo complained that the request "seeks admission of a principal place of business, which is a legal conclusion." Grupo's response further stated that, "after making a reasonable inquiry, the information known or easily obtained by [Grupo] is insufficient to enable [Grupo] to admit or deny this request." This is despite the fact that, as set forth herein, Grupo had already submitted an affidavit by its general counsel in which it admitted that it is "organized under the laws of Mexico" and has its principal place of business in Mexico.

4

order that "grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure, except in a suit brought under the Family Code").

## II. DISCUSSION

### A. Personal Jurisdiction

By its first issue, Mt. McKinley contends that the trial court has personal jurisdiction over Grupo under both general jurisdiction and specific jurisdiction theories.

### 1. Standard of Review and Applicable Law

Issues of personal jurisdiction are questions of law and are reviewed de novo. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). The plaintiff has the initial burden to "plead sufficient allegations to confer jurisdiction." *Id.* Once that burden is met, the defendant seeking to avoid the court's jurisdiction takes on the burden to negate "all potential bases for jurisdiction pled by the plaintiff." *Id.* Where, as here, the lower court does not make findings of fact and conclusions of law in support of its ruling, "all facts necessary to support the judgment and supported by the evidence are implied." *Id.* (citing *BMC Software Belg.*, 83 S.W.3d at 795).

Non-residents are subject to the personal jurisdiction of Texas courts if: (1) jurisdiction is authorized under the state's long-arm statute; and (2) it comports with guarantees of the United States and Texas Constitutions. *Id.* (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)). Under Texas's long-arm statute, a non-resident defendant is within the court's jurisdiction if the defendant conducts business in the state. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007). Thus, the exercise of personal jurisdiction is

constitutional when: (1) the non-resident defendant has established minimum contacts with the forum; and (2) the exercise of jurisdiction follows the traditional notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

> Although this "fair play" and "substantial justice" test is well known to appellate courts, the expression is imprecise. It gains meaning, however, when viewed in light of the "minimum contacts" a defendant has with the forum. Significant contacts suggest that the defendant has taken advantage of forum-related benefits, while minor ones imply that the forum itself was beside the point. When a nonresident defendant has purposefully availed itself of the privilege of conducting business in a foreign jurisdiction, it is both fair and just to subject that defendant to the authority of that forum's courts.

*Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010) (citations omitted).

"A defendant's contacts with a forum can give rise to either specific or general jurisdiction." *Id.* (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996)). "General jurisdiction exists when a defendant's contacts are continuous and systematic, even if the cause of action did not arise from activities performed in the forum state." *Id.* (citing *CSR*, 925 S.W.2d at 595). A court has specific jurisdiction over a defendant if its alleged liability arises from or is related to an activity conducted within the forum. *Id.* Unlike general jurisdiction, which requires a "more demanding minimum contacts analysis," specific jurisdiction "may be asserted when the defendant's forum contacts are isolated or sporadic, but the plaintiff's cause of action arises out of those contacts with the state." *Id.* (citing *CSR,* 925 S.W.2d at 595; 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1067.5 (3d ed. 2002)). In such cases, "we focus on the 'relationship among the defendant, the forum[,] and the litigation.'" *Id.* (citing *Moki Mac,* 221 S.W.3d at 575–76). Specific jurisdiction is appropriate when (1)

6

the defendant's contacts with the forum state are purposeful, and (2) the cause of action arises from or relates to the defendant's contacts. *Id.* (citing *Retamco*, 278 S.W.3d at 338).

## 2. Evidence

The evidence pertinent to the jurisdictional inquiry includes the 2003 settlement agreement, which, as noted, defined "ASARCO" to include Grupo. The agreement further provides:

> The persons signing this Agreement represent and warrant that they are duly authorized to execute this Agreement on behalf of ASARCO and Mt. McKinley, as defined in this Agreement, respectively, and to bind said corporations to the terms, conditions, provisions, duties and obligations set forth in this Agreement.

Appellants argue that Grupo was therefore a named signatory to the agreement.

Kevin McCaffrey, Asarco's in-house counsel, negotiated and drafted the 2003 agreement. He testified at his deposition that, prior to executing the settlement agreement, he presented the agreement to Gennaro Larrea, the president of Asarco and AMC and one of Grupo's vice presidents. McCaffrey testified that Gennaro approved the agreement after consulting by telephone with his brother German Larrea, who is Grupo's chairman and chief executive officer. After Gennaro spoke with German, Gennaro told McCaffrey: "Okay. Sign the agreement."

According to McCaffrey, after Grupo's 1999 acquisition of Asarco, Asarco's board of directors consisted entirely of Grupo representatives. He testified: "[D]uring my time at Asarco, and after the Grupo acquisition, there was no decision, whether it was paper clips or a $100 million insurance settlement, that wasn't presented to German Larrea."

7

In support of its special appearance, Grupo submitted the affidavit of Alberto de la Parra, its general counsel. De la Parra averred, in relevant part, as follows:

3. [Grupo] is organized under the laws of Mexico with its principal place of business in Mexico;

4. [Grupo] has no connection or continuous or systematic contacts with Texas;

5. [Grupo] is not a resident of Texas and is not required to maintain a registered agent for service in Texas;

6. [Grupo] does not maintain a place of business in Texas and has no employees, servants, or agents within the state;

7. [Grupo] has not entered into a contract with a Texas resident that is performable, in whole or in part, in Texas;

8. [Grupo] has not committed any tort, in whole or in part, in Texas;

9. [Grupo] has not recruited Texas residents, directly or through an intermediary located in Texas, for employment inside or outside Texas . . .

10. [Grupo] has no substantial connection with Texas.

11. [Grupo] was not a named insured, additional insured, or beneficiary of the insurance policies underlying the Settlement Agreement . . . . [Grupo] did not have any right, title or interest in the insurance policies such that it could make a claim to the proceeds of the insurance policies.

12. [Grupo] was not a party or a signatory to the Settlement Agreement . . . . [Grupo] did not authorize any person or entity to sign or execute the Settlement Agreement.

13. Kevin McCaffrey has never been an officer, director or employee of [Grupo]. Further, [Grupo] never authorized Kevin McCaffrey to execute or enter the Settlement Agreement on [Grupo]'s behalf.

14. [Grupo] received no consideration under the Settlement Agreement . . . .

15. [Grupo]'s subsidiaries that do business in the United States maintain separate physical offices, have separate employees, and conduct separate operations from [Grupo]. For instance, [Asarco], a New

8

Jersey corporation, maintained separate offices in New York, New York. [Asarco] was later re-organized into a limited liability company under Delaware law, at which time it moved its offices to Phoenix, Arizona.

### 3. Analysis

Mt. McKinley first argues that the trial court has general jurisdiction over Grupo because (1) Asarco and AMC have extensive contacts with Texas, and (2) the contacts of those subsidiaries must be imputed to Grupo under the alter ego doctrine.

The alter ego doctrine provides that a parent company and its subsidiary may be "fused" for jurisdictional purposes if the plaintiff proves that "the parent controls the internal business operations and affairs of the subsidiary." *BMC Software Belg.*, 83 S.W.3d at 799. "But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *Id.* A parent company cannot be subjected to personal jurisdiction based on the local activities of its subsidiary when "the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent and is not acting as merely one of its departments . . . ." 4A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1069.4; *see Landmark Land Co. v. Bennett*, No. 13-12-00117-CV, 2012 Tex. App. LEXIS 8026, at \*19 (Tex. App.—Corpus Christi Sept. 20, 2012, pet. denied) (mem. op.). "[T]he party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities [must] prove this allegation, because Texas law presumes that two separate corporations are distinct entities." *PHC-Minden*, 235 S.W.3d at 173.

9

It is undisputed that Asarco and AMC have continuous and systematic contacts with Texas such that the exercise of general jurisdiction over those entities is proper. The question for this Court, then, is whether those entities may be fused with Grupo for jurisdictional purposes. The Texas Supreme Court has relied on the following factors in determining whether a subsidiary is separate and distinct from its parent corporation for personal jurisdiction purposes: (1) the amount of the subsidiary's stock owned by the parent corporation; (2) the existence of separate headquarters; (3) the observance of corporate formalities; and (4) the degree of the parent's control over the general policy and administration of the subsidiary. *Id.* at 175 (citing 4A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1069.4); *cf. El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero, S.A. de C.V.*, 82 S.W.3d 622, 634–35 (Tex. App.—Corpus Christi 2002, pet. dism'd w.o.j.).[4] It is undisputed that AMC is a wholly-owned subsidiary of

---

[4] In *El Puerto de Liverpool*, this Court, citing pre-*PHC-Minden* case law, enumerated the following factors relevant to the alter ego inquiry:

(1) whether distinct and adequately capitalized financial units are incorporated and maintained;

(2) whether daily operations of the corporations are separate;

(3) whether formal barriers between the management of the entities are erected, with each functioning in its own best interest;

(4) whether the companies filed consolidated tax returns;

(5) whether operating capital is financed by the parent or borrowed from other sources;

(6) whether the subsidiary's stock is owned by the parent;

(7) whether the companies share common officers and directors;

(8) the extent to which separate books and accounts are kept;

(9) whether the companies have common departments of businesses;

(10) whether the companies have separate meetings of shareholders and directors;

(11) whether an officer or director of one corporation is permitted to determine the

Grupo and that AMC owned 100% of Asarco's stock; and yet, it is also undisputed that the subsidiaries maintain separate headquarters from Grupo. Accordingly, application of the first two factors enumerated in *PHC-Minden* does not resolve the jurisdictional question.

We next evaluate the extent of the observance of corporate formalities and the degree of the parent's control over the subsidiaries. *See PHC-Minden*, 235 S.W.3d at 175. McCaffrey testified that Asarco's board of directors consisted entirely of Grupo representatives, and that "after the Grupo acquisition, there was no decision, whether it was paper clips or a $100 million insurance settlement, that wasn't presented to German Larrea," Grupo's president and chief executive officer. He also averred that Asarco's president consulted with German Larrea before approving the 2003 settlement agreement.[5] But parent companies normally exercise at least some control over their subsidiaries, and "[a] subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders." *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975). Indeed, the

---

policies of the other;

(12) whether those with whom the corporation comes into contact are apprized of their separate identity; and

(13) the extent to which contracts between the parent and subsidiary favor one over the other.

*El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero, S.A. de C.V.*, 82 S.W.3d 622, 634–35 (Tex. App.—Corpus Christi 2002, pet. dism'd w.o.j.) (citing *Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 721 (Tex. App.—Austin 2000, pet. dism'd w.o.j.) (noting that "[n]ot all of the above factors need be present or considered")).

[5] Appellants also claim that Grupo once issued a press release on behalf of Asarco regarding the payment of certain bonds. However, the record evidence to which appellants direct this Court is merely an Asarco press release; appellants do not direct this Court to any evidence that such press release was in fact "issued" by Grupo.

Texas Supreme Court has held that "'[a]ppropriate parental involvement includes monitoring the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies.'" *PHC-Minden*, 235 S.W.3d at 176 (quoting 16 MOORE'S FEDERAL PRACTICE § 108.42[3][b]). To pierce the corporate veil in the context of personal jurisdiction, there must be "something beyond the subsidiary's mere presence within the bosom of the corporate family." *Id.* (quoting *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999)). McCaffrey's testimony did not establish that Grupo "controls the internal business operations and affairs" of Asarco and AMC such that exercise of jurisdiction over Grupo would be necessary to prevent fraud or injustice. *See BMC Software Belg.*, 83 S.W.3d at 799. We therefore conclude that Grupo's special appearance should not have been denied on the basis of general jurisdiction.

We next consider the issue of specific jurisdiction. Appellants urge that specific jurisdiction lies because (1) Grupo was a named party to the 2003 settlement agreement, (2) the 2003 agreement settled a pending Texas lawsuit, (3) McCaffrey had authority to execute the settlement agreement on behalf of Grupo, and (4) Mt. McKinley's claims for indemnification arose out of that agreement. In response, Grupo argues that no one had authority to bind Grupo to the terms of the settlement agreement. It further argues that, even if it were bound by the settlement agreement, that would not give rise to specific jurisdiction because it would not mean that Grupo directed actions at Texas or otherwise purposefully availed itself of the Texas forum.

Appellants are correct that the 2003 agreement settles Texas litigation; that Mt. McKinley's claims against Asarco arose out of that agreement; and that the agreement

12

defines Asarco to include, among other entities, Grupo. However, the affidavit of Grupo's general counsel, de la Parra, established that McCaffrey was never an officer, director, or employee of Grupo and that Grupo did not authorize McCaffrey or anyone else to execute the 2003 settlement agreement on Grupo's behalf. Although our review of a special appearance ruling is de novo, "all facts necessary to support the judgment and supported by the evidence are implied" where no findings of fact or conclusions of law are filed. *Retamco*, 278 S.W.3d at 337 (citing *BMC Software Belg.*, 83 S.W.3d at 795). An implicit finding that McCaffrey had no authority to bind Grupo is necessary to support the trial court's judgment and is supported by de la Parra's affidavit. Accordingly, we may not disturb the implicit finding that McCaffrey had no authority to bind Grupo and, in turn, that Grupo was not bound by the settlement agreement.

Even if Grupo were bound as a signatory to the agreement, its entrance into that agreement would not alone establish that Grupo purposefully availed itself of the benefits of the Texas forum. "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). "It is true that in some circumstances a single *contract* may meet the purposeful-availment standard, but not when it involves a single *contact* taking place outside the forum state." *Id.* at 787; *see Ashdon, Inc. v. Gary Brown & Assocs.*, 260 S.W.3d 101, 113 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("Generally, a contract calling for performance outside of Texas does not subject a party to jurisdiction here."); *Turner Schilling L.L.P. v. Gaunce Mgmt., Inc.*, 247 S.W.3d 447, 456–57 (Tex. App.—Dallas 2008, no pet.). This is true even if the

13

contract is related to the settlement of a Texas lawsuit. *See Cerbone v. Farb*, 225 S.W.3d 764, 769–71 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (reversing denial of special appearance where appellants' only contact with Texas was the execution of a promissory note in Illinois that was related to the settlement of a pending Texas lawsuit). Here, the only evidence that Grupo purposefully availed itself of the Texas forum was that it authorized McCaffrey to execute the settlement agreement on Grupo's behalf. But even if we were to assume the truth of that allegation, that would not change the facts that: (1) the agreement was executed in New Jersey, (2) performance of the contract was not required to take place in Texas, and (3) Grupo was not a party to the settled Texas litigation. *See id.* at 770–71.[6] Accordingly, Grupo's alleged status as a signatory to the agreement cannot, by itself, support specific jurisdiction. *See Michiana*, 168 S.W.3d at 784.

We conclude that, on the evidence presented, the trial court did not err in granting Grupo's special appearance. Appellants' first issue is overruled.

## B. Motion for Continuance

---

[6] The appellee in *Cerbone* cited *Diversified Resources Corp. v. Geodynamics Oil & Gas Inc.*, 558 S.W.2d 97 (Tex. App.—Corpus Christi 1977, writ ref'd n.r.e.), in support of its argument that the court had personal jurisdiction over the appellant. *Cerbone v. Ferb*, 225 S.W.3d 764, 770–71 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In *Diversified*, we considered whether the trial court had jurisdiction over a Nevada resident who entered into an agreement and signed a promissory note to settle litigation filed by the Texas plaintiff in federal district court in Texas. 558 S.W.2d at 97. The note provided that the payments be made in Texas. *Id.* We concluded that "there were contacts by the defendant in Texas other than making of payments; to-wit, the settling of aforesaid lawsuit between the parties here and the making of an agreement to implement the settlement." *Id.* at 99. We held that executing the note was sufficient to warrant exercise of specific jurisdiction over the defendant because it "not only purposefully conducted business in the State of Texas but it also contracted to perform its obligations within the State of Texas, thus invoking the benefits and protections of this State's law." *Id.* The *Cerbone* court declined to follow *Diversified*, noting that the appellant in *Cerbone*, unlike the defendant in *Diversified*, "was not a defendant in the underlying case that was settled by an agreement and a promissory note." *Cerbone*, 225 S.W.3d at 771. The court therefore concluded that execution of the contract did not support specific jurisdiction. *See id.* The same rationale applies here.

14

By their second issue, appellants argue that, in the event we found no error in the trial court's granting of the special appearance, the order must nevertheless be reversed because the trial court erred in denying its motion for continuance. Appellants argue that (1) TRCP 120a "specifically provides for jurisdictional discovery" and (2) Mt. McKinley "diligently pursued" discovery from Grupo but Grupo refused to provide it.

### 1. Standard of Review and Applicable Law

Texas Rule of Civil Procedure 120a(3) permits a trial court to order continuance of a special appearance hearing to permit further discovery "should it appear from the affidavits of the party opposing the motion that he cannot for reasons stated present by affidavit essential facts to justify his opposition." TEX. R. CIV. P. 120a(3). The trial court's denial of a continuance will not be disturbed absent a clear abuse of discretion, and "the record should clearly show that the trial court has disregarded a party's rights before reversing the trial court's ruling." *Barron v. Vanier*, 190 S.W.3d 841, 847 (Tex. App.—Fort Worth 2006, no pet.); *see also BMC Software Belg.*, 83 S.W.3d at 800.

The Texas Supreme Court has considered the following non-exclusive factors when deciding whether a trial court abused its discretion by denying a motion for continuance seeking additional time to conduct discovery: (1) the length of time the case has been on file, (2) the materiality and purpose of the discovery sought, and (3) whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004); *Barron*, 190 S.W.3d at 847.

15

## 2. Length of Time on File

We first consider the length of time the case has been on file. *See Joe*, 145 S.W.3d at 161. Although Mt. McKinley initially filed its lawsuit on October 25, 2007, Grupo did not file its special appearance until February 27, 2009.[7] A hearing on the special appearance, and on four pending discovery motions filed by appellants, was held on November 28, 2011, more than 21 months after the special appearance was initially filed. Grupo argues that the "sheer magnitude of time" that elapsed between the filing of the special appearance and the hearing thereon is dispositive of appellants' issue. Grupo points to *BMC Software*, in which the Texas Supreme Court rejected the appellant's complaint that the trial court erred in denying a continuance where seven months passed between the filing of the special appearance and the hearing. *See BMC Software Belg.*, 83 S.W.3d at 800–01. *BMC Software* is distinguishable, however, because, although the defendants in that case objected to several discovery requests, the plaintiff "[n]ever filed a motion to compel or otherwise attempted to obtain any discovery [defendants] did not provide." *Id.* at 801. The Supreme Court based its continuance ruling in part on that fact. *See id.* Here, appellants filed multiple motions to compel discovery which were not ruled upon until the special appearance hearing. Therefore, the fact that nearly two years elapsed between the filing of Grupo's special appearance and the hearing thereon is not, by itself, conclusive as to the issue of whether the trial court abused its discretion in denying a continuance.

---

[7] The record reflects that much of this delay could be attributed to the fact the case was removed to bankruptcy court on February 28, 2008 and was not remanded to the trial court until January 22, 2009.

### 3.    Materiality and Purpose of Discovery Sought

Next, we consider "the materiality and purpose of the discovery sought." *See Joe*, 145 S.W.3d at 161.   Mt. McKinley's first requests for production, served upon Grupo within one month after it contends it was served with Grupo's special appearance, asked for, among other things:  "[a]ll documents that relate to the authority of Kevin McCaffrey to sign the Settlement Agreement on behalf of you or any other entity"; "[a]ny documents upon which you rely in asserting that you are not within the definition of 'ASARCO' contained in the Settlement Agreement"; "[d]ocuments showing all present and prior relationships between you and Kevin McCaffrey"; and "[a]ny document indicating that you have were [sic] authorized to do business in Texas or that you have done business in Texas at any time since January 1, 1998."   Mt. McKinley's second request for production additionally sought, among other things:   "[a]ny correspondence or communication between you and any subsidiary, affiliate, or company related to you concerning the Settlement Agreement"; "[d]ocuments showing the relationship between you and (a) [AMC], (b) Minera Nor Peru, (c) Asarco . . . at any time since January 1, 1998"; and

> [a]ll orders and opinions issued by the court . . . [and] all pleadings, motions (including any response and any other document related to each such motion), discovery requests, and discovery responses filed by or on behalf of any party in *Asarco, LLC v. Americas Mining Corp.*, No. 1:07-CV-00018, in the United States District Court for the Southern District of Texas, Brownsville Division.

As noted, Grupo refused the requests and asserted that it "is under no obligation to respond until the court considers and rules on" the pending motions and special appearance.   Counsel for Grupo, in an email addressed to Mt. McKinley's counsel,

17

stated that "[w]e . . . do not intend on engaging in any form of discovery until the Court rules on our special appearance."

Subsequently, appellants submitted a supplemental request for production by letter dated July 19, 2010, to Grupo's counsel, seeking the following:

1. All documents and/or exhibits admitted into evidence in *Asarco LLC v. Americas Mining Corporation* case No. 1:07-CV-00018 ("Fraudulent Conveyance Litigation") relating to the settlement or alleged monetizing [Asarco's] insurance coverage in 2002–03,

2. All documents and/or exhibits admitted into evidence in the Fraudulent Conveyance Litigation relating to Grupo/AMC's alleged exercise of dominion and control over [Asarco] in 2002–03,

3. All of the plaintiffs' exhibits admitted into evidence in the Fraudulent Conveyance Litigation,

4. All of the defendants' responses to all of plaintiffs' Requests to Admit in the Fraudulent Conveyance Litigation,

5. The deposition transcripts, together with all exhibits to such transcripts, taken in the Fraudulent Conveyance Litigation for the following individuals:

    a. German Larrea,

    b. Gennaro Larrea,

    . . .

    e. Kevin McCaffrey, . . . and

    k. Alberto de la Parra.

By their supplemental discovery request, appellants sought to obtain the evidence presented during the bankruptcy adversary proceedings, which resulted in the bankruptcy judge finding that "[t]he record establishes without a doubt that German Larrea rules Grupo and all of its affiliates and no major decision is made without his approval." *Asarco, LLC v. Ams. Mining Corp.*, 396 B.R. 278, 300 (S.D. Tex. 2008).

18

This evidence would be relevant to appellants' theory that personal jurisdiction existed over Grupo under the alter ego doctrine. *See PHC-Minden*, 235 S.W.3d at 173.[8]

Consideration of the materiality and purpose of the discovery sought, therefore, weighs in favor of a finding of abuse of discretion on the part of the trial court in denying a continuance.

### 4. Due Diligence

We finally consider whether appellants have exercised due diligence in their efforts to obtain discovery. *See Joe*, 145 S.W.3d at 161.

Appellants filed a motion to compel discovery after receiving the letter from Grupo's counsel which stated that Grupo had no intention of participating in the discovery process until its special appearance was ruled upon. The trial court granted the motion to compel on September 30, 2009, and it ordered Grupo to respond to the then-pending discovery requests relevant to personal jurisdiction. However, in response, Grupo asserted boilerplate objections to each of Mt. McKinley's requests and produced no documents.[9] Appellants then filed a second motion to compel and a motion for sanctions. The trial court granted the motion in part on March 23, 2010 and awarded $2,500 in sanctions against Grupo "to compensate Mt. McKinley for preparation and prosecution of the motion." Grupo then filed amended responses in which it repeated its boilerplate objections to each request, based in part on the fact that

---

[8] Appellants also contend that Grupo has refused to provide discovery regarding whether its subsidiaries held separate shareholder and board meetings. This information would also be relevant to the evaluation of appellants' alter ego theory. *See El Puerto de Liverpool*, 82 S.W.3d at 634–35 (noting that one factor considered in the alter ego inquiry is "whether the companies have separate meetings of shareholders and directors").

[9] Grupo's response to each of the propounded requests for production was as follows: "Grupo objects to this request because it has a special appearance on file with this Court. Grupo further objects to this request as it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence as it seeks information unrelated to jurisdictional issues."

19

its special appearance was still pending before the trial court. The trial court subsequently rendered a protective order stating that Grupo complied with the March 23, 2010 order and prohibiting appellants from "communicating threats or abusive accusations to Grupo" regarding the requests for production or Grupo's compliance therewith.

After negotiations with Mt. McKinley's counsel, Grupo's counsel eventually agreed to produce: (1) "a document identifying the Texas proceeding(s) in which Grupo was a party (e.g., the docket sheet of a legal proceeding)"; (2) "a chart depicting the corporate structure of Grupo, AMC, Old Asarco, and New Asarco as of March 2003, as well as a recent one"; and (3) "'public filings' made by Grupo to the SEC." Appellants claim that, as a result of having reviewed the docket sheet of the bankruptcy adversary proceedings as provided by Grupo, it determined that "alter ego jurisdiction documents existed" in the bankruptcy court file. Appellants then submitted their supplemental discovery requests to Grupo's counsel.

In July 2010, Grupo refused to produce documents responsive to appellants' supplemental request. Grupo then filed a motion for protection on August 5, 2011, in which it argued that it is not required to produce documents related to the bankruptcy adversary proceedings because

> (1) any documents from the [adversary proceedings] do not fall within the scope of [appellants'] requests for production because Grupo was not a party to that litigation; and (2) AMC is a named defendant in this lawsuit, and [appellants] have not directed their collection efforts at AMC. It is therefore evident that [appellants] are more interested in fabricating a non-compliance case against Grupo than in conducting jurisdictional discovery.

Appellants note that, on October 22, 2010, they submitted a request for production to AMC seeking documents from the bankruptcy adversary proceeding, but that AMC

20

"ultimately produced no responsive documents." Appellants also sought to depose the Larreas, but Grupo denied the request. A motion filed by appellants to compel the Larreas' deposition was pending at the time of the special appearance hearing.

Our review of the record leads us to conclude that appellants exercised due diligence in pursuing discovery relevant to the jurisdictional issue. Moreover, as previously discussed, appellants' pending discovery requests sought information that was relevant to personal jurisdiction over Grupo, either under a specific jurisdiction or general jurisdiction theory. Consideration of this factor weighs in favor of a finding of abuse of discretion in denying the continuance.

### 5. Analysis

Although a substantial amount of time passed between the filing of the special appearance and the hearing thereon, it is apparent that Grupo was engaged in a strategy of obstruction that went beyond, as it claims, merely "oppos[ing] discovery requests as needed to protect its rights." Instead, Grupo sought to avoid even the most benign and reasonable discovery requests—such as a request to confirm that Grupo is a Mexican corporation with its principal place of business in Mexico. Moreover, Grupo's counsel repeatedly urged that Grupo was under no obligation to respond to discovery requests until the trial court ruled on the special appearance—a position that is plainly belied by the rules of civil procedure. *See* TEX. R. CIV. P. 120a(3) ("The court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, *the results of discovery processes*, and any oral testimony . . . ." (Emphasis added)).

21

Under the circumstances of this case, we conclude that the trial court abused its discretion by denying appellants' motion for continuance.[10] *See Barron*, 190 S.W.3d at 850 (finding, where plaintiff "alleged sufficient information which, if existing and discovered, could support his allegations of personal jurisdiction," that the trial court abused its discretion in denying a continuance of a special appearance hearing "especially in light of [defendants'] apparent strategic avoidance of [plaintiff's] attempted discovery"). Appellants' second issue is sustained.

## III. CONCLUSION

The judgment granting Grupo's special appearance is reversed, and we remand the cause to the trial court with instructions to grant the motion for continuance and for further proceedings consistent with this opinion.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
18th day of April, 2013.

---

[10] Grupo contends in its response to appellants' second issue that, because the parties entered into a Rule 11 agreement with respect to the date of the special appearance hearing, there could be no abuse of discretion in failing to continue the hearing. We disagree. The Rule 11 agreement referred to by Grupo states that an "[o]ral hearing on all pending motions" would take place on Monday, November 28, 2011. Grupo contends that Mt. McKinley impermissibly "changed its mind" when it filed its motion to continue the special appearance hearing. However, the hearing went ahead as scheduled; and appellants would arguably not have been in violation of the Rule 11 agreement had it obtained a continuance from the trial court. It is also noteworthy that among the motions to be heard at the hearing were four of appellants' motions to compel discovery. If those motions were granted, it would have been necessary to continue the special appearance hearing. Accordingly, even though "[a] Rule 11 agreement is a contract subject to the usual rules of contract interpretation," *Barton v. Fashion Glass & Mirror, Ltd.*, 321 S.W.3d 641, 644 (Tex. App.—Houston [14th Dist.] 2010, no pet.), we will not construe this particular agreement to implicitly foreclose the possibility of a continuance.

22