**Affirmed and Memorandum Opinion filed September 15, 2016.**



In The

# Fourteenth Court of Appeals

### NO. 14-16-00041-CV

## JIM RICHARDSON, RICHARDSON OUTDOOR ADVERTISING, INC., AND ACTION DISPLAY, INC., Appellants

### V.

## MH OUTDOOR MEDIA, LLC, Appellee

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-57897**

## MEMORANDUM OPINION

In this interlocutory appeal from the denial of a special appearance, the main question presented is whether the trial court erred by finding that three nonresident defendants had established minimum contacts in the state of Texas. The plaintiff, a Texas limited liability company, alleged in its petition that it was defrauded in a conspiracy between a Texas resident and the three nonresident defendants. To support its claim that the nonresident defendants were amenable to jurisdiction in

this state, the plaintiff introduced evidence that the nonresident defendants had traveled to Texas to meet with the plaintiff and develop a business relationship, which was later exploited in the alleged conspiracy. We conclude that this evidence, in addition to other evidence discussed in this opinion, supports the trial court's finding that the nonresident defendants established minimum contacts in Texas. We therefore affirm the trial court's order denying the special appearance.

## BACKGROUND

MH Outdoor Media, LLC is a Texas limited liability company that manages billboards and other outdoor media assets. In 2011, MH Outdoor hired Curtis Brooks, a Texas resident, to acquire and manage assets that fit the company's business model. For nearly two years, Brooks negotiated on behalf of MH Outdoor to acquire both billboards and billboard companies located throughout the United States. By 2013, MH Outdoor learned that certain of these transactions were completed at inflated prices and that Brooks had received kickbacks following each purchase.

MH Outdoor began an investigation into Brooks's transactions, which led to the three nonresident defendants involved in this appeal. Jim Richardson is an Alabama resident and the president of two Alabama corporations: Richardson Outdoor Advertising, Inc. and Action Display, Inc. For ease of reference, we identify Richardson and his corporations collectively as the Richardson Defendants. Between 2011 and 2013, MH Outdoor paid the Richardson Defendants more than $11 million for the purchase of billboards and other assets, all of which were located in either Alabama, Florida, or Tennessee. During the same period, the Richardson Defendants wired at least $1.75 million to Brooks's personal bank account in Texas.

MH Outdoor filed suit in Texas against Brooks, the Richardson Defendants, and several additional parties not involved in this appeal. Among its asserted claims, MH Outdoor alleged that the Richardson Defendants conspired with Brooks to sell billboards to MH Outdoor at above-market prices and to split the resulting profits.

The Richardson Defendants filed a special appearance, challenging whether a Texas court could exercise specific jurisdiction over them.[1] Attached to their special appearance was a sworn declaration, in which the Richardson Defendants stated that they had no offices, employees, or presence in Texas. They admitted that they had traveled to Texas in 2011 to meet with Brooks and other representatives of MH Outdoor. However, the Richardson Defendants asserted that "no business was transacted" at this meeting and that they were just "get[ting] acquainted personally." The Richardson Defendants also admitted that they came to Texas to meet with MH Outdoor on a second occasion, after MH Outdoor discovered the payments to Brooks.

In a response, MH Outdoor produced an affidavit from its president, Mac Haik, who testified that he personally attended the initial meeting with Brooks and the Richardson Defendants in 2011. Controverting the Richardson Defendants' evidence, Haik testified in his affidavit that the meeting "was solely related to business deals between Richardson and MH Outdoor regarding billboard transactions" and "was not a personal visit." Haik further testified that, in the two years following the meeting, MH Outdoor entered into at least thirty transactions with the Richardson Defendants, and in many of those transactions, "Richardson

---

[1] The Richardson Defendants also challenged the exercise of general jurisdiction, but MH Outdoor expressly chose to not litigate that issue. Accordingly, we focus on just the question of specific jurisdiction.

3

was the one who reached out to MH Outdoor with potential deals, not the other way around."

Haik testified that the Richardson Defendants came to Texas for a second in-person meeting after MH Outdoor realized that Brooks had been receiving kickbacks from billboard companies unrelated to the Richardson Defendants. Haik testified that, at this second meeting, the Richardson Defendants misled MH Outdoor about the nature of the payments that they had been making to Brooks. According to Haik, the Richardson Defendants represented that the money they had wired to Brooks was a loan, even though there was no note, interest rate, or repayment.

Haik testified that there were numerous other communications with the Richardson Defendants after Brooks's kickbacks had come to light. However, in these communications, the Richardson Defendants continued to conceal their relationship with Brooks. In one email correspondence, the Richardson Defendants offered to manage the assets of MH Outdoor in Alabama, Florida, and Tennessee. Later, after proposing additional business dealings, the Richardson Defendants opined that "the Curtis [Brooks] mess and dishonesty to Mac [Haik]. . . should [not] be a negative on [their] part."

The trial court conducted a hearing on the special appearance. Although no live testimony was taken, the Richardson Defendants presented an argument to the trial court, in which they characterized their payments to Brooks as a finder's fee, rather than a kickback or loan. At the end of the hearing, the trial court ruled against the Richardson Defendants and denied the special appearance. The Richardson Defendants moved for findings of fact and conclusions of law, but the trial court denied that motion as well.

## ISSUES PRESENTED

The Richardson Defendants raise three issues in this appeal. In their first two issues, they challenge the trial court's ruling on their special appearance, arguing that there is no basis for either specific jurisdiction or general jurisdiction. Because MH Outdoor only asserts specific jurisdiction over the Richardson Defendants, we do not consider the arguments related to general jurisdiction. In their third issue, the Richardson Defendants argue that the trial court erred by not entering findings of fact and conclusions of law. We address this issue in our discussion of the standard of review.

## PERSONAL JURISDICTION

Texas courts have personal jurisdiction over a nonresident defendant when the Texas long-arm statute authorizes such jurisdiction and when the exercise of jurisdiction is consistent with the guarantees of due process. *See Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010). The Texas Supreme Court has interpreted the broad language of the Texas long-arm statute to extend Texas courts' exercise of personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (citing Tex. Civ. Prac. & Rem. Code § 17.042). Those requirements are fulfilled when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A defendant's contacts in the forum state may give rise to either general jurisdiction or specific jurisdiction. *See Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010) (per curiam). If the defendant's contacts have been continuous and systematic, such that the defendant is essentially at home

5

in the forum, general jurisdiction is established, regardless of whether the defendant's alleged liability arises from those contacts. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). If the defendant's contacts have been isolated or sporadic, rather than continuous and systematic, the trial court may exercise specific jurisdiction, provided that there is a substantial connection between the defendant's contacts with Texas and the operative facts of the litigation. *Id.* at 585.

The plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction. *See Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff has the initial burden of pleading allegations that would permit a trial court to exercise personal jurisdiction over the nonresident defendant. *See BMC Software*, 83 S.W.3d at 793. This minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas. *See Huynh v. Nguyen*, 180 S.W.3d 608, 619 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Once the plaintiff has met this burden, the defendant assumes the burden of negating all potential bases for personal jurisdiction that exist in the plaintiff's pleadings. *See BMC Software*, 83 S.W.3d at 793.

MH Outdoor asserted in its petition that the trial court had jurisdiction over the Richardson Defendants because they intentionally did business in Texas. This allegation satisfied MH Outdoor's minimal pleading requirement. *See Huynh*, 180 S.W.3d at 619–20. Accordingly, the burden shifted to the Richardson Defendants to negate this basis for the trial court's exercise of jurisdiction.

## STANDARD OF REVIEW

Whether a trial court has jurisdiction over a defendant is a question of law, which we review de novo. *See BMC Software*, 83 S.W.3d at 794. In deciding the

6

jurisdictional issue, the trial court may also be required to resolve questions of fact. *Id.* The Richardson Defendants contend that if fact questions are raised, then the trial court must grant a request to enter findings into the record, or else the trial court commits error. In the absence of written findings, the Richardson Defendants argue that we must conduct a de novo review of the record without considering any disputed facts. This argument does not align with any of our rules or well-settled precedents.

Rule 28.1(c) of the Texas Rules of Appellate Procedure provides that a trial court need not file findings of fact in an appeal from an interlocutory order. *See* Tex. R. App. 28.1(c). This rule applies in an interlocutory appeal from the denial of a special appearance. *See Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 428 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (holding that the trial court did not commit error by refusing a request to enter findings).

Recently, in another case involving a special appearance, the Texas Supreme Court confirmed that findings are not required if the parties presented conflicting evidence. *See TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 n.4 (Tex. 2016). When the trial court fails to resolve such disputes with written findings, the Supreme Court instructed that we are to follow a familiar standard of review: we must resolve the disputed fact questions in favor of the trial court's determination and we must imply all relevant facts necessary to support the trial court's judgment that are supported by the evidence. *Id.* These implied findings are not conclusive, though, and they may be challenged for legal and factual sufficiency. *See BMC Software*, 83 S.W.3d at 795.

In a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

7

We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally insufficient when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 816.

In a factual-sufficiency challenge, we consider and weigh all of the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407. We may not substitute our own judgment for that of the fact finder or pass upon the credibility of witnesses. *Id.*

## ANALYSIS

The Richardson Defendants do not argue that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. However, they do argue that they never established minimum contacts in Texas. Their brief raises the following questions: (1) whether there is legally and factually sufficient evidence to show that they purposefully availed themselves of doing business in Texas; (2) assuming there is sufficient evidence, whether their contacts are substantially connected to the claims asserted by MH Outdoor; and (3) whether the fiduciary shield doctrine protects Richardson, individually, from the trial court's exercise of jurisdiction. We examine these points in turn.

## I.      Purposeful Availment

To establish minimum contacts, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law." *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). Due process requires purposeful availment because personal jurisdiction "is premised on notions of implied consent—that by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there." *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).

Three principles guide the analysis when deciding whether a nonresident defendant has purposefully availed itself of the privilege of conducting activities in Texas: (1) only the defendant's contacts with Texas are relevant, not the unilateral activity of another party or third person; (2) the defendant's acts must be purposeful and not random, fortuitous, or attenuated; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *See Moki Mac*, 221 S.W.3d at 575.

### A.      The Richardson Defendants traveled to Texas and solicited business from MH Outdoor.

Both sides agree that the Richardson Defendants voluntarily came to Texas to meet with MH Outdoor. The first meeting occurred in 2011, at the beginning of the parties' business relationship. The Richardson Defendants claimed that this initial meeting was a personal visit, where no business was transacted. However, MH Outdoor disputed that characterization. In his affidavit, Haik testified that the meeting was not personal and that its purpose was actually to evaluate proposed billboard deals. In accordance with our standard of review, we assume that the trial

court resolved this conflict in favor of MH Outdoor because Haik's affidavit supports the trial court's judgment.

The Richardson Defendants came to Texas to meet with MH Outdoor a second time after MH Outdoor discovered the payments to Brooks. The Richardson Defendants suggest that this meeting is not relevant to the minimum-contacts analysis because it occurred "well after any of the conduct alleged to have occurred when Brooks was involved." But the evidence supports a finding that this meeting actually furthered the alleged conspiracy. According to Haik, the Richardson Defendants misled MH Outdoor at this meeting by representing their payments to Brooks as loans when they were really kickbacks.

These two in-person meetings in Texas are sufficient by themselves to demonstrate purposeful availment. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013) (holding that a Russian company had purposefully availed itself of doing business in Texas by attending two meetings in Texas with a Texas corporation); *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 887 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding that a New York defendant had "crossed a bright line and purposefully availed itself of the privilege of conducting business in Texas" when the defendant initiated a face-to-face meeting with a Texas client in Texas).

In addition to their travels, the Richardson Defendants had numerous telephone and email conversations with MH Outdoor. Haik testified that there were "hundreds, if not thousands" of these conversations over the course of the parties' relationship, and "[a]ll or practically all of these communications concerned the billboard transactions." Furthermore, in many of these communications, Haik testified that it was the Richardson Defendants "who reached out to MH Outdoor with potential deals, not the other way around." The Richardson Defendants

10

disputed this last point, claiming in their sworn declaration that they never solicited MH Outdoor. But again, the trial court was free to resolve this conflict in favor of MH Outdoor, and we defer to that implied finding.

Standing alone, the telephone and email communications may be insufficient to confer specific jurisdiction. *See Riverside Exports, Inc. v. B.R. Crane & Equip., LLC*, 362 S.W.3d 649, 655 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (explaining that phone numbers and emails do not necessarily indicate anything about the location of either the sender or the recipient). Nevertheless, we may factor these communications into our analysis because the Richardson Defendants made these contacts to promote the same business relationship that was formed with MH Outdoor during the parties' in-person meeting in Texas. *See M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 453 S.W.3d 492, 506 (Tex. App.—Houston [14th Dist.] 2014, pet. granted). When considered alongside the evidence of the Richardson Defendants' travels to Texas, these communications support the trial court's finding that they purposefully availed themselves "of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law." *See Retamco Operating, Inc.*, 278 S.W.3d at 338.

## B. The Richardson Defendants' arguments lack merit.

The Richardson Defendants challenge the trial court's implied finding of purposeful availment in several respects. First, they argue that they did not purposefully avail themselves of doing business in Texas because all of their contacts with MH Outdoor focused on business ventures in other states.[2]

---

[2] In their special appearance, the Richardson Defendants identify these states as being Alabama, Florida, and Tennessee, but in their appellate brief, they refer to a slightly different trio: Florida, Georgia, and Tennessee. MH Outdoor did not allege in its petition that any business dealings were conducted in Georgia, and we are not aware of any evidence that would support such a claim. There is evidence, however, that the parties conducted business in Alabama. In any

Relying on *KC Smash 01, LLC v. Gerdes, Hendrichson, Ltd.*, 384 S.W.3d 389 (Tex. App.—Dallas 2012, no pet.), the Richardson Defendants propose that "the parties have to seek to engage in a business venture in Texas" before a nonresident defendant's contacts will be sufficient to confer specific jurisdiction. If by "engage in a business venture in Texas" the Richardson Defendants mean that a nonresident defendant must establish a business entity in Texas or acquire property in Texas, then their argument goes too far. A nonresident defendant "with no physical ties to Texas" may be haled into a Texas court simply by soliciting clients in Texas for an out-of-state business. *See Moncrief*, 414 S.W.3d at 154 (discussing *Siskind v. Villa Foundation for Education, Inc.*, 642 S.W.2d 434, 436 (Tex. 1982)); *see also Michiana*, 168 S.W.3d at 789–90 (discussing cases finding specific jurisdiction when the forum contact "was aimed at getting extensive business in or from the forum state").

We disagree with the Richardson Defendants' characterization of the holding in *KC Smash*. The court in that case did not create any novel requirements, as the Richardson Defendants seem to suggest with their proposed rule. Rather, the court correctly followed the approach required by our case law. The court looked at all of the nonresident defendant's contacts and then asked whether those contacts, considered collectively, showed that the nonresident defendant had purposefully sought a benefit, advantage, or profit in Texas. *See KC Smash*, 384 S.W.3d at 394. We follow the same approach in this case, but the outcome is different because the facts are different. The nonresident defendant in *KC Smash* never traveled to Texas, *id.* at 393, whereas the Richardson Defendants voluntarily came to this state for the reason of soliciting business from MH Outdoor. This fact

event, this discrepancy does not affect our ultimate conclusion that the Richardson Defendants established minimum contacts in Texas.

12

alone demonstrates that the Richardson Defendants purposefully availed themselves of doing business in Texas.

In their supplemental brief, the Richardson Defendants argue that their proposed rule is supported by two recent decisions from the Texas Supreme Court, citing *Searcy v. Parex Resources, Inc.*, Nos. 14-0293 & 14-0295, — S.W.3d —, 2016 WL 3418248 (Tex. June 17, 2016) and *Cornerstone Healthcare Group Holding, Inc. v. Nautic Mgmt. VI, L.P.*, Nos. 14-0538 & 14-0539, — S.W.3d —, 2016 WL 3382159 (Tex. June 17, 2016). Both of these cases recognize that a trial court may exercise specific jurisdiction when, in certain business disputes, the nonresident defendant specifically sought out a Texas business or Texas assets. *See Searcy*, 2016 WL 3418248, at *9 ("Parex Canada appears to have known that Nabors had operations in Texas, but it did not specifically seek out a Texas seller or Texas assets, let alone attempting to meddle with a contract governed by Texas law or develop a Texas business."); *Cornerstone*, 2016 WL 3382159, at *6 ("Conversely, the respondents here specifically sought both a Texas seller and Texas assets."). However, neither case goes so far as to say that the nonresident defendant must, as a prerequisite to personal jurisdiction, "seek to engage in a business venture in Texas."

*Searcy* actually demonstrates that the trial court may exercise specific jurisdiction over the Richardson Defendants. In that case, the Texas Supreme Court held that a nonresident defendant had established sufficient minimum contacts in Texas because, just like the Richardson Defendants, the nonresident defendant voluntarily came to Texas for in-person meetings and allegedly made misrepresentations at those meetings regarding a proposed business deal outside of Texas. *See Searcy*, 2016 WL 3418248, at *12–13.

In their next argument, the Richardson Defendants assert that their contacts with Texas were random or fortuitous. They explain that their contacts could have occurred anywhere—e.g., their meetings with MH Outdoor "could have happened in Indiana or Georgia," or their communications "could have been with someone in Louisiana or Rhode Island"—but they all occurred in Texas because MH Outdoor happens to be located here. This point is not persuasive.

The relevant factor is not that the Richardson Defendants may have been willing to make their contacts in a forum other than Texas. Instead, it is that they reached out from beyond their home state and created continuing relationships and obligations with a business in Texas. *See Michiana*, 168 S.W.3d at 785 ("Sellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the jurisdiction of the latter in suits based on their activities." (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985))). The Richardson Defendants reached out to Texas when they voluntarily came here and met with MH Outdoor. They also maintained this relationship with Texas by having continued business communications with MH Outdoor. These contacts with Texas were purposeful, not random or fortuitous.

The Richardson Defendants also argue that the evidence is legally and factually insufficient to show that they purposefully availed themselves of doing business in Texas. Viewed in the light most favorable to the trial court's ruling, the evidence shows that the Richardson Defendants traveled to Texas, that they met with MH Outdoor to discuss billboard transactions, and that they continued these business discussions over telephone and email. This evidence is legally sufficient to demonstrate purposeful availment, as we held above.

The Richardson Defendants have not fleshed out the contours of their factual-sufficiency challenge. They identify no specific evidence in their brief that

14

conflicts with the trial court's implied finding of purposeful availment. From our review of the record, only two questions of fact stand out in the minimum-contacts analysis. The first involves the purpose of the parties' initial meeting in Texas: the Richardson Defendants claimed that it was a personal visit, whereas MH Outdoor claimed that it was business-related. The second is whether the Richardson Defendants ever solicited MH Outdoor in Texas: the Richardson Defendants denied that point, whereas MH Outdoor insisted on it. We assume that the trial court resolved both of these questions in favor of MH Outdoor, and based on the record as a whole, we cannot say that either implied finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Thus, we overrule the legal-sufficiency and factual-sufficiency challenges.

## II.     Substantial Connection

"[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585. Specific jurisdiction requires that we analyze the jurisdictional contacts on a claim-by-claim basis, unless all claims arise from the same contacts. *See Moncrief*, 414 S.W.3d at 150–51.

MH Outdoor asserted claims for conspiracy, breach of fiduciary duty, fraud, conversion, and unjust enrichment. All of these claims arise out of and relate to the kickback scheme between Brooks, the Richardson Defendants, and certain additional parties not involved in this appeal. These claims also have a substantial connection with the Richardson Defendants' minimum contacts with Texas. The Richardson Defendants came to Texas in 2011 to solicit business from MH Outdoor, and the business relationship that they formed was exploited in the alleged kickback scheme with Brooks. And when the Richardson Defendants

15

returned to Texas after Brooks was terminated by MH Outdoor, the Richardson Defendants misrepresented their involvement in that kickback scheme.

The Richardson Defendants argue that a substantial connection is lacking because no reasonable person could find that any of the legally relevant acts of each claim occurred in Texas. When they address the claims for conversion and unjust enrichment, for example, the Richardson Defendants emphasize that the converted property, if any, would no longer be in Texas and would have to be disgorged from another state. The gist of this argument seems to be that the Texas contacts are not substantially connected to the claims because the alleged torts were completed in other states. But that is not the test. The test is whether the "relevant acts (i.e., those connected to [the] claims) occurred, at least in part, in Texas." *See Kelly*, 301 S.W.3d at 660–61; *see also Michiana*, 168 S.W.3d at 791–92 (disapproving of an approach that makes specific jurisdiction dependent on whether the contacts were tortious). The evidence produced by MH Outdoor satisfies this test.

The Richardson Defendants also make certain merits-based arguments. They argue that the fraud claim fails as a matter of law because they owed no duty to disclose anything to MH Outdoor. They further explain that they cannot be liable for aiding and abetting Brooks because Brooks, as an independent contractor, owed no fiduciary duty to MH Outdoor. And, after asserting that they have defeated all claims, they argue that there can be no derivative claim for civil conspiracy. These arguments are not appropriate at the special-appearance stage because the merits of the underlying claims are not at issue when deciding whether the trial court has personal jurisdiction over a nonresident defendant. *See Dresser-Rand Group, Inc. v. Centauro Capital, S.L.U.*, 448 S.W.3d 577, 584 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

We conclude that the Richardson Defendants established sufficient minimum contacts in Texas, and that these contacts are substantially connected to the claims asserted by MH Outdoor.

## III. Fiduciary Shield Doctrine

We finally address an argument advanced by Richardson, the individual, that he is protected from the trial court's exercise of jurisdiction under the fiduciary shield doctrine. This doctrine provides that a nonresident officer or employee may not be subject to personal jurisdiction when all of his contacts with the forum state were made on behalf of his corporation or employer. *See Cerbone v. Farb*, 225 S.W.3d 764, 769 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Richardson argues that this doctrine applies to him because his contacts with Texas were made in a corporate capacity, as the president of his two Alabama corporations. Richardson relies singularly on *Stull v. LaPlant*, 411 S.W.3d 129 (Tex. App.—Dallas 2013, no pet.), but the court in that case applied the fiduciary shield doctrine to a claim sounding in contract, rather than in tort. *Id.* at 137–38. This court has held that the fiduciary shield doctrine "does not protect a corporate officer from specific personal jurisdiction as to intentional torts or fraudulent acts for which he may be held individually liable." *See Cerbone*, 225 S.W.3d at 769; *see also Fjell Tech. Group v. Unitech Int'l, Inc.*, No. 14-14-00255-CV, 2015 WL 457805, at *5 (Tex. App.—Houston [14th Dist.] Feb. 3, 2015, pet. denied) (mem. op.) ("A corporate employee 'is not shielded from the exercise of specific jurisdiction as to torts for which the . . . employee may be held individually liable.'"). Because MH Outdoor has alleged torts for which Richardson may be individually liable, we hold that the fiduciary shield doctrine does not protect Richardson from the trial court's exercise of jurisdiction.

## CONCLUSION

The trial court's order denying the special appearance is affirmed.


/s/  Tracy Christopher
    Justice


Panel consists of Justices Boyce, Christopher, and Jamison.